Move on to our consolidated case, Unite Here! Local 878. These are two cases, case numbers 21-70388 and 21-70700. We'll hear, we've got two petitioners, appellants, um, uh, Mr. Eglinton. Yeah, and I guess the way we'll do this, we'll give you each 12 minutes, you can reserve what you want for rebuttal. Thank you. I'd like to reserve two minutes for rebuttal. Thank you, your honors, for the chance to address you and for the chance to address you via Zoom. That is actually convenient for me, uh, for the obvious reasons. I'm Dmitry Eglinton from Bernard Eglinton and Lavit, representing Unite Here! Local 878. What I want to talk about today, uh, is to me the truly interesting question in this case, which is the degree of oversight which the Ninth Circuit Court of Appeals should exercise over the Labor Board, uh, provides what can only, I think, be described as a perfunctory review of an administrative law judge decision. Um, in this case, the General Counsel... Before we get there, do you disagree with the position, uh, that, um, if the Board says it's just adopting the ALJ, uh, decision in all respects, that we are then just basically reviewing the ALJ's decision? Uh, I agree that that would be correct. To me, the interesting question is whether it is actually so perfunctory or boilerplate for the Board to say that, that the case needs to be sent back to the Board with instructions to do more than that. This... So, I'm not really following this argument. So, this Court regularly says things like, um, we affirm the decision below for the reasons given by the District Court. This Court regularly says, uh, in a case involving numerous issues, uh, we have considered the other issues and find them to be without merit. In each of those situations, the Court is obviously simply saying that the District Court got it right. So, what is the difference here? Well, there are two differences. One is, respectfully, Your Honor, that, I'm happy to say, has not been my experience with this Court. Coming into this argument, I don't know if, uh, my position is going to prevail or not, but I have every expectation, uh, backed up by many decades of litigation, that whatever decision this panel makes, it is going to explain its analysis. It's not going to simply say, affirmed or reversed. And secondly, I would say there's a huge difference between the Ninth Circuit Court of Appeals reviewing the decision of a lifetime appointed federal judge and an administrative agency just perfunctorily enunciating magic language... But, but, but counsel, I mean, the problem is we have case law that goes the other way. And, and I, I actually think the distinction that you're making goes, cuts the other way. Because an agency, you're, all we're doing is reviewing the record. And if the NLRB says, hey, look, we've looked at the ALJ's decision. We're fine with it. We're going to rely on that record. Then that's the record that's sent up to us. And I, you seem to be saying it's not okay to one paragraph. Hey, we've read it. We're fine with it. We accept this. You want them to do a full decision. I, I want them to do something at least slightly less perfunctory than saying we've considered the ALJ's decision and we adopted. And in NLRB versus Bob's Big Boy Family Restaurants, 693 F second 904, Ninth Circuit, 1982, the court said the board must explain its can determine whether it attempted to. But, but counsel, we, we, this is not unique to the NLRB. This is, we do this all the time with a whole host of agencies. You know, the BIA has the same, the same rule. And, you know, quite frankly, the, these agencies can get it wrong. If, if they're going to choose to just rely on what the AJ, the IJ did or the ALJ did, then they're putting all their eggs in that basket. And if we think that that was wrong, then then they've got a problem. So I don't know why they can't choose to do that. Well, I guess here's, here's, and we all know they're fascinating issues being discussed in many cases about the roles of administrative agencies. The problem with letting an agency just say we're adopting a lower tribunal's decision, or in this case, the ALJ's decision is that there's actually no evidence in the record that the agency gave any thought, in this case in particular, as we. So you, you want a declaration saying that on, on January 22nd, I actually read the entire record. I have a witness who my, my, my clerk was in the office with me, can attest that I read it. I didn't fall asleep as I read it. I actually asked a couple of questions and, and that would suffice for your purpose. Well, that would certainly suffice. But in this case, there's not even a sentence in the board decision showing that they remembered at the end of the decision that there had been exceptions brought by the union. I think it's very unlikely that anyone could ever say under oath that they had read the entire administrative record without falling asleep. And that's of course not what I'm expecting. But in the decisions that have been affirmed, you have some indication in the board's decision that it acknowledged there was an argument. Okay, let's, let's assume we don't agree with your argument. Why did the IJ get it wrong? The IJ got it wrong because on the face of the administrative law judge's decision. And I'm sorry, I said IJ, I got immigration on my mind. This is obviously an ALJ. Understood. On the face of the decision, we see that since 2010, Monday through Friday, union representatives are showing up between 10am and 11am in the employee break room or cafeteria and talking to workers about the terms and conditions of their employment. And suddenly under a new general manager, when the union shows up, there's a management meeting called a stand up meeting taking place at 10am in the middle of the employee cafeteria. And that meeting completely prevents and this is not actually disputed. On that day, you couldn't have a confidential anything remotely resembling the confidential communication between the union and its members because the cafeteria is filled with six or seven management people and it's not that big a cafeteria. The next day, the same thing happens. So on the face of the ALJ's decisions, there is a unilateral change from there maybe being a couple of the same two management people, one of whom has no supervisory authority as asserted by the Hilton, who might have some of those two days on February 7 and February 8, the cafeteria is no longer available for union to union member conversations. That happens on February 7. So the ALJ specifically found that there was nothing, quote, out of the ordinary, close quote, about the management presence in the cafeteria beginning in February 2017. So that's a either you're saying that that is unsupported by any substantial evidence, or you're saying that you just think he got it wrong. If you're just saying the latter, that's not an issue warning our intervention, is it? I'm saying that it is not supported by the ALJ's own factual findings, which are that something very different happens on February 7 and February 8. He characterizes it as being nothing out of the ordinary, but by his own statement, for seven years, I'm sorry, I've got yeah, for seven years prior to that, the union is meeting with workers. And for the first time under this new general manager, there are standup meetings taking place in the cafeteria. Now he goes on to basically say, I don't see the evidence of sort of bad intent. The general manager says, I decided I'm going to go do reward acknowledgements and rotate. But that doesn't mean it's not a unilateral change, because it is. And it doesn't mean that it doesn't give the impression of surveillance, because it does. It's worth noting that we filed the charge on February 17. So we were talking about this unilateral change, February 7, February 8, if we look only at those two days, and we look at the ALJ's factual findings, it is clear that the ALJ's legal conclusion, that having management meetings happening at 10am on February 7 and February 8 for the duration of that hour is a unilateral change, and does give the impression of surveillance. There are other things that the ALJ got wrong that are also inconsistent. But I don't expect you, frankly, to be in the position of microscopically going through the record and trying to figure out whether the ALJ's conclusion is supported by the ALJ's own factual. Because you might fall asleep. Because you might fall asleep. That's the board's job. And again, I don't expect them to attest that they didn't fall asleep. But some acknowledgement by them that they paid attention to the issue. It's a shocking board decision to the following way. I've been doing this a long time, as have we all. There is, I mean, we saw their extensive analysis of the many unfair labor practices that they found that Hilton did commit. But there is almost invariably, in my experience, invariably, some acknowledgement that there was an appeal. And I guess maybe I have some take some professional offense. I worked on an appeal of that ALJ decision. I went to great efforts to explain to the board why the ALJ got it wrong as a matter of fact, as well as a matter of law. And to have the board not even specifically say, we have looked at this argument and we reject it for the reason the ALJ gave. I would say that would be enough to pass master under the case law. Okay. But the absence of... Do you want to reserve? You've got to go in on a one minute for rebuttal. Do you want to... I would like to reserve. Thank you. I didn't realize that was my whole 12 minutes. Yeah. Thank you so much. Mr. Fisher, we'll hear from you again. Thank you, your honor. I don't need to reserve time. I'll be as brief as I possibly can be. We're only asking the board to do what it said it was going to do, which is hold compliance proceedings in abeyance until the union's petition was resolved. I'm 64 years old. I've been doing this for 31 years. Mr. Eglinton was my, he was my basic legal skills professor at the University of New York. So I'm getting a little long in the tooth, but I've never seen the board do this before. And it's troubling and it's destabilizing and it's destructive. Labor relations are relations. They depend upon us working together. And specifically, I'm talking about the union and the Hilton. And this has been a longstanding embroiled problem now. And one of the reasons it's been a problem, particularly recently, is the board seems to be inclined to put a thumb on the union. And we're saying, stop, just let us work this out. And our approach, what we've asked the court to do is entirely consistent with the board's own compliance guidelines. I don't know why they've varied from them now. They've never done that before, at least to my knowledge. But what I'm missing, and forgive me, because since I'm 79 years old, I can't even remember what being 64 was like. But what's the legal objection? Maybe they've changed their practices. So what's the legal objection that you have to their enforcing the order? So process matters, Your Honor. I mean, we ought to be able to depend upon their word. And the legal objection is, hey, you're telling us you're going to do something. We're relying upon that. It's consistent with the policy of the National Liberals. Did they say it in a specific case? Or you're just saying that's the history and practice of what they've done? Or did they give you an express representation? They gave my colleague Nassaude an express representation. That's in the record in the briefing. Are you arguing equitable estoppel? I mean, can the government be equitably estopped in a case like this? Yes. Yes, it can. And in fact, cases that we cited in our reply brief point to that exact same fact, which is that, hey, look, does the board have the statutory authority to seek a petition for enforcement? Yes, of course. And we've never said otherwise. But you're not a potted plant. We've got three recognized, respected judges here. And you guys have got a role to play, too. And you guys have an opportunity to look at what's happening here and decide in your own discretion. And yes, it is equitable based. And that's exactly what the authorities point to that we cited and discussed in our reply brief. You guys are the ones who actually decide, hey, you know, maybe. But I'm not sure. I mean, that's a pretty heavy rule to suggest that the government could be equitably stopped by a representation made by I don't even know exactly who it was. But it's not it was the head of the you know, was it it wasn't a board member on the NL? I think it was the board agent, Judge Nelson. But, you know, the bottom line here is that, you know, this is a this is a relationship. These are these are conversations. These are discussions. Well, the relationship may be soured. The relationship may be soured, but that's a different question from whether we should step in. And that's a very important question, Your Honor. And please don't don't dispute in isolation. You're seeing this before as it comes before you right now. And the three of us are talking. But make no mistake, this thing has been going on for what, 2008 until now and who knows how far in the future. You know, we've got to restore some sanity to this process. But it ought to begin with the board doing what they said they were going to do and relying upon their own guidelines, which is the case handling manual. And is that going to which is that they'll contact us. They'll say, hey, is there an issue here? A problem here? Do we need to file a petition for enforcement? I predict the answer is going to be no. And how can I make that prediction? Because look at what's happened before in the past. We signed what? Three, four, five different settlement agreements here. I lost track. Some of the people who signed this settlement agreement are people who have retired. You know, I'm hot on their heels. OK, you know, so it's like let the process work. And that's what we're asking the court to remind the board is that, you know, you're supposed to be here to enforce labor relations policy, which begins primarily with us talking with the union and the union talking with us. And we're working together in a collaborative, sometimes adversarial manner, but in a collaborative manner. And but you know what? That works. It's just like the schoolyard, if you will. Schoolyard recess. These issues get sorted out between us. And we don't need a lot of heavy handed enforcement actions from the board, which only engender a lot of distrust and undermine important relationships. So I would say, your honor, you know, all of these underlying coming back to your point, you know, all of these underlying incidents occurred four to five years ago. Ultimately, a petition for enforcement is equitable in scope. All of the authorities recognize that. And so you have to ask yourself, OK, yes, you have authority for it. But is it necessary? Is it necessary in this context? Is it necessary under these circumstances? No. I mean, the underlying incidents occurred four or five years ago. We had three settlement agreements executed. The most recent one in 2019. Even the administrative law judge expressed some confusion as to how is it that we didn't, you know, why was that not approved by the board? There's been no non-compliance and not even a hint of non-compliance. The board's guidelines require pre-petition discussion to determine if enforcement is even necessary. That never happened here. And then finally, the board is seeking enforcement of the order in full. We don't even know what that is yet. You know, I mean, Mr. Eglinton has made some excellent arguments. Maybe the court, maybe those will gain traction with the court. I don't know. We don't know. You know, process matters. You do know that there was a finding against you on the three issues. Right. I guess your point, or sorry, there was, yeah, there was a finding against you on three issues. Right. And I'm interrupting you now and I apologize, but you know, all of those were wrapped up in the 2019 settlement agreement too. And that's why we included those in our supplemental excerpts so that the panel would have the balance of those. So the benefit from those as well is that you can see that, you know, hey, we've said, we've come to the table. You know, we've been trying to move forward with this particular union for a number of years now. There's always going to be some friction and some elbows rubbing. Let us sort it out. We don't need the petition for enforcement. It's only going to engender a whole lot of more hostility and animosity. It's going to be destabilizing. It's going to be destructive. You know, frankly, I still don't get it. I don't know why they felt it was necessary to even file the petition for enforcement. We'll hear from Mr. Loro in a minute. I respect him. I don't mean to imply otherwise, but this really truly is a situation, is a bridge too far. We ought just to kind of, you know, tap the brakes here maybe a little bit, deny the petition, or at least, you know, set it aside and without prejudice even, and just let us see if we can get this resolved without a lot of heavy handed action. I'm going to yield the time unless the panel had any other questions for me. Yeah, I think it probably makes sense to hear from Mr. Loro at this point. So thank you. Thank you so much, your honor. Thank you, your honors. I am Greg Loro for the National Labor Relations Board. Appreciate my colleagues for the union and the employer and their arguments today. And I will start with the employer's arguments, if I may. And my opponent said, let the process work. I want to talk about the process for a moment. And as we explained in our brief, their claim that enforcement is premature and appropriate fails factually and legally. This is a case where we have uncontested violations that harmed employees' rights. There's no dispute there that the board issued an order to remedy those violations and restore the employee's ability to exercise their statutory rights. There's no dispute. It's a proper order. And we look at the facts. We don't have full compliance or partial compliance. We don't even have a claim of full compliance. We don't even have a claim that they've promised to fully comply with each aspect of the board's order. That's where we are years later. And yes, a lot of time has passed. But we also have the Supreme Court reminding us in Mexia, Tile, and Raytheon that even full compliance would not moot a board enforcement case or make it inappropriate. And also, enforcement would not bar settlement. The process could continue. We could still talk. What enforcement does is take a board order that's not self-effectuating and make it a legal obligation subject to potential contempt proceedings. And in Mexia, for example, the Supreme Court, I believe, rejected the exact argument my opponent's making today, which is why not send this back to the board for further explanation of what's the status of compliance and why enforcement is necessary. I believe that's exactly what the Supreme Court said the Court of Appeals shouldn't have done in Mexia. And so, I am happy to answer any questions your honors may have. Can I just ask a question about compliance? As I look at the three issues, I thought that they had, the unilateral implementing the modified access policy, I thought that had been resolved. Am I wrong about that? I have no indication if your honor means the one that was, I believe, was unilaterally implemented on January 15th, 2018, the one that was kind of the end of bargaining. I thought they'd walked it back though, but you're saying you don't have any indication of that. I don't have any indication of that. In fact, one thing I noted your honor, because I take it very seriously and I think my colleagues are happy when someone says we want to settle, let's not fight. I looked very closely at all of these settlements they cite, which were not finalized or implemented, which issued before the board's order issued, and which omit certain requirements in the board's order. I believe one of the missing requirements is walking back that January 15th, 2008 policy. I just don't see a reference to that in these settlements, but that really is just an example of what I'm saying, that as a factual matter, we don't have full compliance or even a claim of it. And as a legal matter, even full compliance would not move the board's order or make it inappropriate. And so, I think under the appropriate and warranted here. And absent questions on that, your honor, I'm sorry about that. I do want to say one thing though. I appreciate my opponent's argument, but as to that email, I believe it was from a board compliance officer, and the idea that there's some estoppel claim there, that email referenced compliance, voluntary compliance, which is a board order. I just want to say for the record, I see no material misstatement of fact or promise about enforcement there. I see nothing that could be reasonably relied on. And as we explained in our brief, if there were a misunderstanding, we cleared it up shortly by filing for enforcement, nothing there and stopped the employer from filing their own petition if they wanted to. There's no statutory time limit on those filings. So, I don't think there's meat to that argument. I think at the end of the day, with the circumstances here and the applicable law from the Supreme Court, enforcement is warranted and there's no basis for saying that seeking it is an abuse of discretion. On the union's argument, you spoke this morning about the issue of the board's adoption of the administrative law judge's decision. The board's position, as you can tell from our brief, is the board did adopt it, not in any particular unusual way. As the court noted, they've seen this before. The board said, we're adopting the judge's findings and conclusions and didn't make any exception for this issue, the dismissals that are being challenged. And in those circumstances, the courts have said, well, then it's to the adopted judge's decision that we turn and it's just a matter of whether that decision holds muster. It's not a problem if there's no decision to review. You review the judge's analysis. There isn't a legal basis or case law for imposing a requirement of the board going on in a bit more detail about why they're adopting it. They're stuck with the judge's analysis, which is fine because, as you can tell from our brief, we think the judge's analysis is well supported. You spoke briefly this morning about the merits. We addressed those in our brief. The claims of surveillance and unilateral change are based on a couple of factual predicates that weren't proven, or at least the board reasonably disagreed with those predicates. The credited evidence shows there was not a significant material change in management present in the break room in February. And as to the unilateral change, you have to ask yourself, what was the practice and how has it changed? There was no practice of employees meeting with their union in the break room in private to the exclusion of management. Management was in the break room before, at the same time they were in the break room after, at the same time there was no change. I know there was a relocation of meetings. The general manager credibly testified he did that to break up the monotony that used to be mostly outside the general manager's office. He moved them to different locations. Sometimes in the break room, I think there were one or two meetings in the break room in February and a couple employee appreciation meetings, but it just doesn't add up to the evidence of coercion and something so out of the ordinary to suggest surveillance that my opponent makes it out to be. And I would leave the court with this thought. In the LJB case that we cite from this court, the court adopted the board's factors for what does make something coercive enough that it amounts to surveillance. And the court in adopting the board's test explained for one thing, you look to whether there's other coercive conduct during the observation in question or during the interactions in question. And here, as the judge correctly noted, there's really no evidence of what was said or done during the incidents in question, much less anything showing it was coercive, or more to the point, much less anything compelling a conclusion that it was coercive. At the end of the day, the board applied applicable law and made factual findings that are supported by substantial evidence. And because of that, the board asks that its order be enforced in full, including the dismissals. So with that said, I thank your time. And absent additional questions, I appreciate it. Well, thank you. We have your argument and we'll move. I think we got a minute for a little over a minute for rebuttal from Mr. Eglinton. Thank you. Earlier, I think Judge Nelson said, well, there's case law supporting the legitimacy of the board simply adopting and incorporating as its decision, the decision of the administrative law judge. What's interesting is that when I actually looked at those cases, I don't see it. I see the NLRB versus Pacific Southwest Airlines decision from this court, 550 F2nd 1148, saying that board decisions and orders must, to the maximum extent possible, reflect the reasoning behind the remedy elected. And quote, in no case should orders and findings be perfunctory or boilerplate, as is sometimes the case. And then I see a couple of unpublished decisions cited by counsel to the general counsel. And I see the Louisiana Pacific Court case, where it's true, the court did say, because the board adopted the ALJ's rulings, findings, and conclusions as its own, it is to the ALJ's opinion that we turn. But that's not a holding on this issue about whether where there is a legitimate question raised. And in this case, the legitimate question is whether two days of management meetings after seven years of there not being management meetings in the break room, there being some managers in the break room, but suddenly on February 7 and February 8, the break room is filled with these unprecedented management meetings. Does that make this case like the Sheridan-Hankerich case with surveillance and unilateral change? Or is it, as the general counsel argues, not surveillance? That's a real issue, which the ALJ did not weigh or address at all. It did not address why what happened on February 7 and February 8 on its own was not surveillance or unilateral change. And then the board didn't address it because all they did was rubber stamp the ALJ's decision. Under those circumstances, I submit that remand to the board to explain why it found the ALJ's analysis persuasive under these facts and what's wrong with the arguments that the union was making is actually appropriate oversight of an administrative agency. Thank you for your argument. Mr. Fisher, I think I'll give you the opportunity. You said you might not need it. Do you want to say anything in rebuttal or? Just 10 seconds, Your Honor, is in response to Mr. Loro, he talks about the compliance issue. We've never gotten any postings from the board to comply on some of the prescriptive elements. And much of the compliance is hinged upon action taken by the union. That is, things that the union has to do to come to us first. And we addressed all of that in our briefing, but it's a non-argument. I would ask the court to deny the petition and just let us sort this out. Thank you. Okay. Thank you. Thank you to all counsel for your arguments in these cases and they're now submitted. And that concludes our arguments for the week. All rise. Thank you, Your Honor.
judges: NELSON, LEE, Rakoff